**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
378 N. Main Avenue
Tucson, AZ 85701

       Plaintiff,

 v.

U.S. FISH AND WILDLIFE SERVICE,
1849 C Street, NW
Washington, DC 20240

       Defendant.

Civil Action No.: 1:18-cv-2069

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.     Plaintiff the Center for Biological Diversity ("Center") brings this action under the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA"), against Defendant U.S. Fish and Wildlife Service ("the Service") for failing to make timely determinations and to disclose public records requested by the Center.

2.     The requested records concern the Service's assessment of the legal status of the American burying beetle (*Nicrophorus americanus*) ("Beetle"), an endangered species that once lived across much of the central and eastern United States but which has been eliminated from the vast majority of its range. The records also pertain to the Service's use of a new program to assess the status of endangered species, including the Beetle, referred to as a "species status assessment" or "SSA," and the agency's removal of scientists from the SSA team for the Beetle.

3.     The Center seeks declaratory relief establishing that the Service has violated FOIA. The Center also seeks injunctive relief ordering the Service to provide the Center with all responsive records without further delay.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6.      Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## PARTIES

7.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works to protect native wildlife and plants and their habitats, including the Beetle. The Service's failure to comply with FOIA undermines the ESA's and FOIA's policy of government transparency and harms the Center's ability to provide transparency on matters of public interest, such as the development of the Beetle's SSA and how the federal government generates, compiles, gathers, synthesizes, analyzes, and applies science to conserve endangered and threatened species within the SSA program generally.

8.      Defendant U.S. FISH AND WILDLIFE SERVICE is an agency of the U.S. government within the Department of the Interior. The Service is in possession and control of the records that the Center seeks, and as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f) and is responsible for making determinations on and fulfilling the Center's FOIA requests.

## STATUTORY BACKGROUND

9.      FOIA's basic purpose is to foster government transparency. FOIA requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions applies. 5 U.S.C. § 552.

10.     FOIA requires federal agencies to promptly disclose requested records. *Id.* § 552(a)(3)(A), (a)(6)(C)(i).

11.     FOIA places the burden on the federal agency receiving a request for records to show that the agency may withhold requested records pursuant to FOIA's nine, narrowly construed exemptions. *Id.* § 552(a)(4)(B).

12.     These exemptions are to be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.

13.     Within 20 working days of receiving a request, an agency must determine if it will release requested records and must notify the requester of its determination and the reasons therefor, the right to seek assistance from the FOIA Public Liaison, and the right to appeal an adverse agency determination. *Id.* § 552(a)(6)(A)(i).

14.     In "unusual circumstances," an agency may extend the 20-working-day deadline for a determination by no more than 10 additional working days, but it must provide written notice to the requester setting forth the unusual circumstances for the extension and "the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). If the agency provides written notice that the request cannot be processed with the specified time limit, the agency shall provide "an opportunity to limit the scope of the request so that it may be processed within" the statutory time limit or "an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request" and "shall make available its FOIA Public Liaison" to "assist in the resolution of any disputes between the requester and the agency." *Id.* § 552(a)(6)(B)(ii).

15.     An agency may make one request to a requester for information regarding the request, and may toll the 20-working-day deadline while awaiting a response. *Id.* § 552(a)(6)(A). The requester's response to the agency's request for information ends the tolling period. *Id.*

16.     FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate all records that are responsive to the FOIA request. *Id.* § 552(a)(3)(C)-(D).

17.     FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

## **STATEMENT OF FACTS**

### A.  **The American Burying Beetle**

18.     The Beetle has a shiny black body with bright red-to-orange markings.

19.     The Beetle is one of very few insects that raises its offspring after procreation. When a pair of Beetles finds a pigeon-sized carcass—something they can detect from up to about five miles away—they fly to it, strip it of fur or feathers, coat it with anal secretions that protect against bacterial and fungal growth, and bury it in the ground within a network of tunnels. The female lays eggs in an adjacent chamber and the Beetle larvae feed on the carcass before growing into adults.

20.     Native to the United States and Canada, the Beetle once occurred in most eastern and central states, and along the southern borders of three eastern Canadian provinces. The Beetle has disappeared from most of its historic range due to widespread habitat loss and, it is thought, due the extinction of the passenger pigeon. Before the species dwindled and the last

known passenger pigeon died in 1914, it was one of the most abundant species of birds on Earth and provided carrion of just the right size for the Beetle's reproduction.

21.     Enacted in 1973, the ESA is a federal statute that protects endangered and threatened species. The Service administers the ESA for terrestrial species, such as the Beetle. 50 C.F.R. § 402.01(b).

22.     Endangered species such as the Beetle are entitled to the ESA's substantive protections that reduce threats to the species, slow and reverse the trend toward extinction, and put the species on the road to recovery. These protections mandate, among other duties, that (1) the Service develop and implement science-based "recovery plans" for each endangered and threatened species, 16 U.S.C. § 1533(f); (2) all federal agencies ensure that their actions are not likely to jeopardize endangered and threatened species' continued existence, *id.* § 1536; and (3) prohibit all persons from the unlawful "take" of endangered wildlife. *Id.* § 1538. These protections led the Supreme Court to describe the ESA as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).

23.     In 1989, the Service listed the Beetle as an "endangered species" due to its disappearance from most of its historic range. U.S. Fish & Wildlife Service, *Determination of Endangered Status for the American Burying Beetle*, 54 Fed. Reg. 29,652 (July 13, 1989); *see also* 50 C.F.R. 17.11(h). The Service concluded that declines in the Beetle are driven by habitat loss and fragmentation; agriculture; oil and gas development; pesticides; increased competition; and a decrease in available carrion. The species may also be affected by climate change and disease.

24.     Despite these myriad threats to the species, on August 18, 2015, the American Stewards of Liberty, the Independent Petroleum Association of America, the Texas Public Policy Foundation, and an individual submitted a petition to the Service asking to delist the Beetle—i.e., to completely remove it from the lists of endangered and threatened species. After the Service failed to make a timely finding on the petition, these parties sued the Service. In settling the parties' lawsuit, the Service agreed to apply the Service's new SSA policies and to prepare a new species status assessment for the Beetle.

25.     On February 1, 2018, the Service invited a scientist and American burying beetle expert to participate in the SSA.

26.     The scientist agreed to participate and provided the Service with data and a model he and another scientist had developed to estimate the distribution of habitat for the Beetle in Nebraska.

27.     The Service showed the scientist a draft assessment of the Beetle which concluded—incredibly—that the Beetle is somehow not vulnerable to the conversion of its historic habitat to cropland. In this scientist's expert opinion, there were obvious shortcomings in both the analysis and the conclusion of this draft assessment. Therefore, he attempted to engage with the Service to resolve those issues.

28.     After the scientist asked questions about the Service's methods and conclusions, he was removed from the SSA team for the Beetle.

29.     The scientist believes that the Service may attempt to use the Beetle's SSA to justify a future down-listing of the Beetle, from endangered to threatened, and to exempt agricultural activities from ESA regulation.

B. **American Burying Beetle SSA FOIA Request (FWS-2018-00495)**

30.     To learn whether there is a basis for the scientist's concerns, the Center submitted

a FOIA request by email to the Service dated February 27, 2018.

31.     The Center requested "all records generated in connection with the ongoing

[SSA] for the American burying beetle (*Nicrophorus americanus*), including but not limited to

all records of communications with scientists outside [the Service]."

32.     The Service acknowledged receipt of the request on March 1, 2018.

33.     By email on March 9, 2018, the Service notified the Center that the agency had

assigned tracking number FWS-2018-00495 to the Center's FOIA request and placed it on the

"exceptional/voluminous" track for processing. The Service also notified the Center that its

FOIA request had been referred from Region 6 of the Service to Region 2, which is the agency's

lead Region for the Beetle.

34.     By email on April 9, 2018, a representative of the Service asked whether the

Center was directing its request only to Region 6 and whether its request was limited to

communications with scientists outside of the federal government. The Service representative

stated that the agency hoped to refine—*i.e.*, narrow—the scope of the Center's request.

35.     The following day, a representative for the Center responded that the Center's

FOIA request was not limited to Region 6, or limited to communications with outside scientists,

but that the Center would be like to receive communications with outside scientists prior to

receiving additional records.

36.     By emails on May 1 and 2, 2018, the Center's representative reiterated that it was

directing its FOIA request to both Region 2 and Region 6 of the Service. The Center's

representative also requested an estimated date of completion for the Center's request that remain unfulfilled.

37.     As of the filing of this complaint, the Service has failed to provide any records that are responsive to the Center's request.

38.     As of the filing of this complaint, the Service has failed to make a determination that describes the scope of the records it intends to produce or withhold in response to the Center's request and the reasons for withholding any such records.

39.     As of the filing of this complaint, the Service has not informed the Center that it may appeal any specific adverse determination according to 5 U.S.C. § 552(a)(6)(a)(i) or 5 U.S.C. § 552(a)(6)(B).

40.     As of the filing of this complaint, the Service has not provided a date by which it expects to make a determination on the Center's FOIA request. 5 U.S.C. §552(a)(B)(i).

41.     The Service has no lawful basis under FOIA for its delay in producing records that are responsive to the Center's February 27, 2018 FOIA request.

42.     As of the filing of this complaint, 132 workdays have passed since the Center filed its FOIA request.

**C.   "State Representation on Species Status Assessment Teams" Memorandum FOIA Request (FWS-2018-00258)**

43.     The SSA program is supposed to guide how the Service gathers the scientific data and information necessary for ESA decisions about whether and how to protect endangered and threatened species. For instance, listing determinations—such as whether to delist or change the Beetle's listed status from "endangered" to "threatened"—must be decided "solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). In the case of

the Beetle, however, the Center is concerned that the SSA program was used to shut the views of an expert scientist out of the process.

44.     Although the SSA program now guides many of the decisions made by the Service pursuant to the ESA, the public knows little of the program, its implementation, or how the new program affects the Service's implementation of the ESA.

45.     From an *E&E News* article dated December 5, 2017, the Center learned of a memorandum, entitled "State Representation on Species Status Assessment Teams" ("Memorandum"), that Principal Deputy Director Greg Sheehan had issued on October 13, 2017. *See* Exhibit A. The Service did not make the Memorandum available to the public.

46.     This Memorandum directed Service personnel that, going forward, at least one representative from the governor's office(s) for the state(s) in which the assessed species occur are to be included on "SSA teams"—*i.e.*, the teams tasked with compiling the best available scientific data on a species. Before this directive, analogous teams were comprised of scientists with expertise in the species in question, not staff or officials acting on behalf of governors or other elected politicians.

47.     The policy considerations underlying the Memorandum's call for the inclusion of governors' representatives on teams responsible for compiling the best available scientific data to guide decisions about legal protections for endangered species was, and remains, unclear.

48.     Due to the lack of transparency about the SSA policies and program and the Memorandum, on December 7, 2017, the Center submitted a FOIA request to the Service requesting a copy of the Memorandum and all records mentioning, including, referencing, and/or generated in connection with the Memorandum.

49.     On December 7, 2017, the Service received the Center's request and assigned it FOIA number FWS-2018-00258.

50.     On January 8, 2018, the Service again acknowledged that it had received the Center's FOIA request, informed the Center that it was in the Service 's "complex" processing track, and granted the Center's public-interest fee waiver. The Service also invoked a 10-workday extension due to "unusual circumstances," 43 C.F.R. § 2.19, and stated that the Service would issue a determination by January 5, 2018—a date three days prior to the issuance of the Service's letter.

51.     On January 16, 2018, in response to its FOIA request, the Center received a copy of the Memorandum. The Service did not produce any additional records mentioning, including, referencing, and/or generated in connection with the Memorandum.

52.     On March 13, 2018, a representative of the Center emailed the Service inquiring about the status of its FOIA request and offering to assist the Service in facilitating the Service's response. The Service did not respond to the Center's inquiry.

53.     On May 1, 2018, the Center's FOIA request was assigned to the Service's Branch of Listing Policy and Support, Ecological Services.

54.     On May 23, 2018, 115 business days after the Center submitted its FOIA request, the Chief of the Service's Branch of Listing Policy and Support, Ecological Services, emailed the Center a memorandum entitled "Guidance on the Implementation of the Agency Priority Performance Goals."

55.     In the same email, the Service's Chief of Ecological Services asked the Center to confirm that it was still interested in the records before the Service "embark[ed] on a search effort."

56.     On May 29, 2018, the Center's representative affirmed that the Center required a determination on its FOIA request. The Center has not received any additional communications or other responsive records from the Service.

57.     As of the filing of this complaint, the Service has not provided the Center with a determination that describes the scope of the records it intends to produce or withhold and the reasons for withholding any records.

58.     As of the filing of this complaint, the Service has not informed the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).

59.     The Service has no lawful basis under FOIA for its delay in producing records responsive to the Center's December 7, 2017 FOIA request.

60.     As of the filing of this complaint, 186 workdays have passed since the Center filed its FOIA request.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The Service Failed to Provide a Determination on the Center's
### American Burying Beetle SSA FOIA Request (FWS-2018-00495)

61.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

62.     The Center properly requested records within the control of the Service through its February 27, 2018 FOIA request to the agency.

63.     The Center has a statutory right to receive a determination from the Service, as well as to promptly receive the underlying records it seeks.

64.     The Service has not made a determination on the Center's FOIA request that describes the scope of the records the Service intends to produce or withhold and the reasons for withholding any records, or informs the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(a)(i) or 5 U.S.C. § 552(a)(6)(B).

65.     The Service's failure to make a determination on the Center's FOIA request violates FOIA, 5 U.S.C. § 552(a)(6).

66.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

67.     The Center's organizational activities will be adversely affected if the Service is allowed to continue violating FOIA's disclosure provisions.

68.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The Service Failed to Complete an Adequate Search for Records Responsive to the Center's American Burying Beetle SSA FOIA Request (FWS-2018-00495)

69.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

70.     The Center has a statutory right to have the Service process its FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3). The Service is in violation of the Center's rights in this regard because it has failed to complete a search that is reasonably calculated to locate all records responsive to the Center's FOIA request.

71.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

72.     The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's requirement to undertake a search that is reasonably calculated to locate records that are responsive to the Center's FOIA requests.

73.     Unless enjoined and made subject to a declaration of the Center's legal rights by the Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**The Service Failed to Promptly Disclose All Non-Exempt Records Responsive to the Center's American Burying Beetle SSA FOIA Request (FWS-2018-00495)**

74.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

75.     The Service violated FOIA, 5 U.S.C. § 552(a)(3)(A), by refusing to promptly disclose records responsive to the Center's FOIA request for which there is no applicable exemption.

76.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

77.     The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's disclosure provisions as it has in this case.

78.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**The Service Failed to Provide Reasonably Segregable Portions of**
**Lawfully Exempt Records Responsive to the Center's American Burying Beetle**
**SSA FOIA Request (FWS-2018-00495)**

79.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

80.     The Center has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions. 5 U.S.C. § 552(b).

81.     The Service violated the Center's rights in this regard by unlawfully withholding reasonably segregable portions of lawfully exempt records that are responsive to the Center's FOIA request.

82.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

83.     The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's disclosure provisions as it has in this case.

84.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**The Service Failed to Provide a Determination on the Center's "State Representation on**
**Species Status Assessment Teams" Memorandum FOIA Request (FWS-2018-00258)**

85.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

86.     The Center properly requested records within the control of the Service through its December 7, 2017 FOIA request to the agency (FWS-2018-00258).

87.     The Center has a statutory right to receive a determination from the Service, as well as to promptly receive the underlying records it seeks.

88.     The Service has not given the Center a determination on its FOIA request that describes the scope of the records the Service intends to produce or withhold and the reasons for withholding any records, or informed the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(a)(i) or 5 U.S.C. § 552(a)(6)(B).

89.     The Service's failure to make a determination on the Center's FOIA request violates FOIA, 5 U.S.C. § 552(a)(6).

90.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

91.     The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's disclosure provisions as it has in this case.

92.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The Service Failed to Complete an Adequate Search for Records Responsive to the Center's "State Representation on Species Status Assessment Teams" Memorandum FOIA Request (FWS-2018-00258)

93.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

94.     The Center has a statutory right to have the Service process its FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3). The Service is in violation of the Center's rights in this regard because it has failed to complete a search that is reasonably calculated to locate all records responsive to the Center's FOIA request.

95.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

96.     The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's requirement to undertake a search that is reasonably calculated to locate records that are responsive to the Center's FOIA request.

97.     Unless enjoined and made subject to a declaration of the Center's legal rights by the Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

### SEVENTH CLAIM FOR RELIEF
### VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The Service Failed to Promptly Disclose All Non-Exempt Records Responsive to the Center's "State Representation on Species Status Assessment Teams" Memorandum FOIA Request (FWS-2018-00258)

98.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

99.     The Service violated FOIA, 5 U.S.C. § 552(a)(3)(A), by refusing to promptly disclose records responsive to the Center's FOIA request for which there is no applicable exemption.

100.    Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

101.     The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's disclosure provisions as it has in this case.

102.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

**EIGHTH CLAIM FOR RELIEF**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**The Service Failed to Provide Reasonably Segregable Portions of Lawfully Exempt Records Responsive to the Center's "State Representation on Species Status Assessment Teams" Memorandum FOIA Request (FWS-2018-00258)**

103.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

104.     The Center has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions. 5 U.S.C. § 552(b).

105.     The Service violated the Center's rights in this regard by unlawfully withholding reasonably segregable portions of lawfully exempt records that are responsive to the Center's FOIA request.

106.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

107.     The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's disclosure provisions as it has in this case.

108.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

### NINTH CLAIM FOR RELIEF
### VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
### (In the Alternative to the First through Eighth Claims)

**The Service Unlawfully Withheld and Unreasonably Delayed Actions Required by FOIA, Acted Arbitrarily and Capriciously, Abused its Discretion, Acted Not in Accordance with Law, and/or Failed to Observe Procedures Required by Law in Response to the Center's American Burying Beetle SSA FOIA Request (FWS-2018-00495) and "State Representation on Species Status Assessment Teams" Memorandum FOIA Request (FWS-2018-00258)**

109.    Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

110.    The Service unlawfully withheld and unreasonably delayed agency action required by FOIA's mandates in response to the Center's FOIA requests.

111.    The Service violated FOIA's mandates and acted arbitrarily, capriciously, in abuse of its discretion, and not in accordance with the law in response to the Center's FOIA requests.

112.    The Service failed to observe procedures required by law in response to the Center's FOIA requests.

113.    The Service's failures are actionable pursuant to the APA, 5 U.S.C. § 706.

114.    Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Service in the foreseeable future.

115.    The Center's organizational activities will be adversely affected if the Service continues to violate FOIA's mandates as it has in this case.

116.    The Center has no other adequate remedy at law to redress the Service's violations of FOIA's mandates.

117.    The Center is entitled to judicial review under the APA, 5 U.S.C. § 702.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Declare that Defendant's failure to timely make a determination on Plaintiff's FOIA request(s) is: unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)(i) and (ii); or, in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1); or, in the alternative, is arbitrary, capricious, an abuse of discretion, or not in accordance with the law, 5 U.S.C. § 706(2)(A); or, in the alternative, failed to observe procedures required by law, 5 U.S.C. § 706(2)(D);

(2)     Declare that Defendant's failure to conduct an adequate search for and to promptly disclose to Plaintiff all records that are responsive to Plaintiff's FOIA request(s), as alleged above, is: unlawful under FOIA, 5 U.S.C. § 552(a)(3); or, in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1); or, in the alternative, is arbitrary, capricious, an abuse of discretion, or not in accordance with the law, 5 U.S.C. § 706(2)(A); or, in the alternative, failed to observe procedures required by law, 5 U.S.C. § 706(2)(D);

(3)     Declare that Defendant's failure to disclose all non-exempt records responsive to Plaintiff's FOIA request(s) is: unlawful under FOIA, 5 U.S.C. § 552(a)(3)(A); or, in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1); or, in the alternative, is arbitrary, capricious, an abuse of discretion, or not in accordance with the law, 5 U.S.C. § 706(2)(A); or, in the alternative, failed to observe procedures required by law, 5 U.S.C. § 706(2)(D);

(4)     Declare that Defendant's failure to provide Plaintiff with reasonably segregable portions of records which may be lawfully subject to a FOIA exemption but which are

responsive to Plaintiff's FOIA request(s) is: unlawful under FOIA, U.S.C. § 552(b); or, in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1); or, in the alternative, is arbitrary, capricious, an abuse of discretion, or not in accordance with the law, 5 U.S.C. § 706(2)(A); or, in the alternative, failed to observe procedures required by law, 5 U.S.C. § 706(2)(D);

(5)    Order Defendant to search for any and all responsive records to Plaintiff's FOIA request(s) using search methods reasonably calculated to locate all records responsive to Plaintiff's FOIA request(s);

(6)    Order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption, at no cost to Plaintiff;

(7)    Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

(8)    Retain jurisdiction of this action to ensure the processing of Plaintiff's FOIA request(s) and that no agency records are improperly withheld;

(9)    Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(10)    Grant such other and further relief as the Court may deem just and proper.

//

//

//

//

//

20

DATED: September 4, 2018                    Respectfully submitted,


*/s/ Ryan Adair Shannon*
Ryan Adair Shannon (D.C. Bar No. OR 00007)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
T: 503.283.5475 ext. 407
F: 503.283.5528
E: rshannon@biologicaldiversity.org

Amy R. Atwood (D.C. Bar No. 470258)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
T: 971.717.6401
E: atwood@biologicaldiversity.org

*Attorneys for Plaintiff*